IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA,

                Plaintiff,

       v.

JOSE GUADALUPE DOMINGUEZ,

                Defendant.

OPINION AND ORDER

10-cr-8-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

The government has charged defendant Jose Guadalupe Dominguez with being an alien who illegally re-entered the United States after deportation, in violation of 8 U.S.C. § 1326(a).  Defendant has challenged the indictment, contending that is not an alien, but a citizen of the United States.  He argues that because his mother was a United States citizen when she gave birth to him in Mexico in 1978, he is a citizen as well.  He acknowledges that he cannot succeed on his claim unless this court finds unconstitutional the immigration statute that applied to defendant's mother at the time he was born.  Reserving a right to obtain a ruling on his motion, defendant entered a plea agreement with the government under which he pleaded guilty to the charge and was sentenced.  I have delayed entering the judgment and commitment to resolve the pending motion.  Because I

1

find that the applicable statute withstands an equal protection challenge under the applicable standard, whether it is rational basis or a heightened scrutiny, and that it is not unconstitutional, I will deny defendant's motion.

Defendant was born in Mexico in 1978.  His mother, Rose Fobes, was born in this country and is a citizen of the United States.  When she gave birth to defendant, she was 17 and married to defendant's father, a Mexican national.  Three weeks after defendant was born, his mother brought him into the United States.  United States immigration agents did not inspect defendant upon his entry into the United States, perhaps assuming that he was a United States citizen because his mother was.  This assumption was incorrect.

8 U.S.C. § 1401 governs citizenship derived at birth from the citizenship of married parents.  In 1978, the precursor to §1401(g), then numbered § 1401(a)(7), provided that United States citizenship passes to a person born outside the United States when one of his parents is an alien and the other is a citizen of the United States who for a total of not less than ten years had been physically present in the United States, at least five of these years occurring after that parent was 14.  Simple arithmetic establishes that if the parent who is a United States citizen is not at least 19, then the child is not a United States citizen if born outside the United States.  Under this law, defendant is deemed not to be a United States

citizen.[1]

The law was laxer for the children of unmarried parents, at least if their mothers were United States citizens: 8 U.S.C. § 1409(c) provided that United States citizenship passed to a person born outside the United States to an unwed mother if she had been a United States citizen at the time of her child's birth and had previously been physically present in the United States for at least one continuous year.

In 1997, defendant was convicted in Wisconsin state court on separate charges of arson and cocaine delivery.  In 1999, after defendant had served his sentences, the INS deported him to Mexico.  He returned illegally to this country, was found and arrested in Jefferson County, Wisconsin in February 2002 and deported to Mexico.  The same pattern was repeated in 2007.  On January 5, 2010, after defendant was arrested again in Jefferson County, he was charged in this case with illegal re-entry.

Defendant has moved to dismiss the criminal charge on the ground that the 1978 version of 8 U.S.C. § 1401(g) deprived him of due process and equal protection because it discriminated against children born to mothers younger than 19.  Defendant also challenges

---

[1]  The statute was renumbered and relaxed in 1986 to require five years of actual presence in this country, only two of which had to be after the parent was 14 years old.  This does not help defendant because citizenship is determined using the law that was in effect at the time of the defendant's birth.  United States v. Gomez-Orozco, 188 F.3d 422, 426 (7th  Cir. 1999).

§ 1401(g) in conjunction with § 1409(c) because the two statutes discriminate against him and similarly situated children on the basis of his legitimacy.  Defendant also raises third-party claims on behalf of his mother, arguing that the two statues violated Rose Fobes's right to marry, to travel, to live internationally and to raise a family.  At its core, "[defendant's] claim is that he is a citizen [of the United States] and has been since birth, provided that the law is applied to citizens in a non-discriminatory manner."  Dft.'s Reply Br., dkt. #15, at 2.  As his remedy in this criminal prosecution, defendant asks this court to declare § 1401(g) unconstitutional and to excise the statute's requirement of five years' physical presence in the United States after the age of 14.  Alternatively, defendant asks this court to declare unconstitutional the discrimination against legitimate children created by the dichotomy between § 1401(g) and § 1409(c), and to apply the latter statute's more lenient provisions to all children born to citizen mothers outside the United States.  Dft.'s M. to Dismiss, dkt. #8.

The government opposes this motion on three general grounds: (1) defendant has no standing to challenge § 1401(g) because he personally has not been treated differently based on his age or gender; (2) defendant cannot assert third-party standing on his mother's behalf; and, (3) defendant lacks any type of standing because this court cannot redress his injury.  Plt.'s Opp. Br., dkt. #14.  Defendant replies that he personally has suffered as a result of the statute because he has been treated as an alien, deported several times and now has been

4

prosecuted as an alien.  He contends in addition that third-party standing is appropriate because this is a criminal case in which no procedure exists to join his mother.  Defendant argues that his injury is traceable to the challenged conduct because "had the United States treated [defendant] as a citizen from birth, rather than as an alien, he would never have been deported in the first place and the current criminal case would never have been filed."  Dkt. #15 at 5.  Interestingly, defendant emphasizes that he is not seeking a court declaration that he is a United States citizen, but merely seeks dismissal of the indictment, a distinction that defendant concedes borders on mere formality.  After all, this court can dismiss the criminal charge against defendant only if it concludes as a matter of law that he is a United States citizen.

Defendant's motion raises procedural issues that are not susceptible to clear resolution, beginning with the question of standing, as <u>Miller v. Albright</u>, 523 U.S. 420, 432-33 (1998), illustrates.  In <u>Miller</u>, as in this case, the challenge was brought by the child; the issue was the constitutionality of a law that required the establishment of proof of paternity before age 18 in order to obtain citizenship when the parent citizen is the father, the child is born out of wedlock and no similar requirement is imposed on the mother.  Depending on which subset of Supreme Court justices one consults, defendant's claim of pre-existing citizenship may or may not be sufficient to convey standing to raise his constitutional challenges to § 1401(g). Justice Stevens delivered the opinion of the Court, in which Chief

5

Justice Rehnquist joined, holding that a foreign national had standing to challenge a statute applicable to her parents that has blocked her from United States citizenship.  Justices O'Connor and Kennedy concurred in the judgment, but would have held that only parents have standing to challenge a statute's gender-based distinctions.  A trio of justices dissented from the judgment.  Justice Breyer concluded that the petitioner had standing to litigate her father's claims, after finding that the Department of Justice had obstructed the father's participation in the lawsuit.  <u>Id</u>. at 473-74. He was joined by Justices Souter and Ginsberg. The final two justices, Scalia and Thomas  deemed the entire question of standing irrelevant because the Court had no power to grant the relief requested, but they concurred in the judgment.  <u>Id</u>. at 452-53.  <u>See also</u> <u>Wedderburn v. INS</u>, 215 F.3d 795, 801-02 (7th Cir. 2000) (breaking out the <u>Miller</u> decision by opinion, then tallying the votes).

As the Court of Appeals for the Seventh Circuit observed in <u>Wedderburn</u>, 215 F.3d at 801, in <u>Miller</u>, the plaintiff "needed to win on each of three issues . . . .  She lost two votes on each and thus lost a total of six votes and the case."   Employing the same analysis in this case calls into question whether defendant can prevail on his motion because at least two justices (Scalia and Thomas) would deny that defendant has any remedy available, two more (O'Connor and Kennedy) would deny him standing to raise equal protection claims on behalf of his mother, with one more justice (Breyer) agreeing that the equal protection claim belongs to defendant's mother but perhaps allowing some leniency in determining whether

defendant had standing to raise his mother's claims.

A party can assert the constitutional rights of another person where (1) the party has suffered an injury in fact; (2) the party and the person have a close relationship; and (3) there was some hindrance to the other person asserting her own rights.  Miller, 532 U.S. at 473 (Breyer, J., dissenting), citing Campbell v. Louisiana, 523 U.S. 392, 397 (1998).  I will assume, as the various justices did in Miller, that defendant meets the first two requirements of this test.  To prove the hindrance prong, defendant observes simply that in his criminal case, he is not aware of any procedure by which his mother could raise her claim.  Dft.'s Reply Br., dkt. #15, at 6.

Whether this terse observation suffices to confer standing on defendant is debatable, but perhaps it is enough in this context.  If defendant's claim of United States citizenship is correct, it is a claim of absolute innocence to the criminal charge against him.  The ends of justice suggest that this court should resolve any doubt about standing in defendant's favor and review his claim on its merits.  For example, in United States v. Gomez-Orozco, 188 F.3d 422 (7th Cir. 1999), defendant entered a guilty plea to illegal reentry by an alien, but before sentencing discovered new evidence suggesting that his father was a United States citizen.  Defendant moved to withdraw his guilty plea on the ground that he actually was a United States citizen under § 1401(g) or § 1409(a).  The district court denied defendant's motion to withdraw his guilty plea, but the court of appeals reversed, finding that defendant

7

had presented enough evidence to put the government to its proof on his citizenship, apparently at trial.  Id. at 427.  This is a material distinction from this case, in which defendant concedes that he does not qualify for citizenship under any statute.  Rather, defendant contends that his citizenship will emerge once the court finds § 1401(g) unconstitutional as applied to him.  This is not a path the court should take unnecessarily. E.g., United States v. Connolly, 552 F.3d 86, 91 n.5 (2d Cir. 2008) (court intentionally avoids delving into constitutional issues implicated by defendant's claim of United States citizenship under 8 U.S.C. § 1403 in illegal reentry prosecution).

In the absence of clear guidance from other courts, there may be no alternative but to determine whether § 1401(g) passes constitutional muster.  This leads to another fork in the road:  what standard of review is appropriate?  Defendant urges the court to employ a heightened scrutiny test, a view endorsed by the dissent in Miller, 523 U.S. at 476,  because the statutes at issue produced different results depending solely on the sex of the parent citizen.  Justice Stevens rejected this view on the ground that "[d]eference to the political branches dictates 'a narrow standard of review of decisions made by the Congress or the President in the area of immigration and naturalization,'" id. at 434, n.11 (quoting Mathews v. Diaz, 426 U.S. 67, 82 (1976), he was satisfied that the distinction in treatment between the children of unmarried males and those of unmarried females would survive a heightened scrutiny.  Id.   In their concurrence, Justices O'Connor and Kennedy endorsed a rational

8

basis test.  <u>Id</u> at 451-52.  <u>See also</u> <u>Fiallo v. Bell</u>, 430 U.S. 787, 792, 794-95 (1977) (statutory distinctions involving admission of aliens constitutional if any facially legitimate and bona fide reason supports them); <u>Wedderburn</u>, 215 F.3d at 801 (appearing to endorse rational basis test in dicta); <u>Barthelemy v. Ashcroft</u>, 329 F.3d 1062 (9th Cir. 2003) (using rational basis review for petitioner's challenge to citizenship statutes classifying applicants according to marital status of their parents); <u>Runnett v. Schultz</u>, 901 F.2d 782, 787 (9th Cir. 1990) (using rational basis test to uphold statutory precursor to § 1401(g)).  In <u>Nguyen v. INS</u>, 533 U.S. 53 (2001), the court found that § 1409(a) passed muster under a heightened scrutiny test, thereby avoiding having to decide whether a lesser degree of scrutiny pertained to equal protection challenges to immigration laws.  <u>Id</u>. at 60-61.

Further, defendant's third-party claim on behalf of his mother is not entitled to heightened scrutiny because neither age nor marital status age is a suspect classification under the equal protection clause. <u>Varner v. Illinois States University</u>, 226 F.3d 927, 931 (7th Cir. 2000) (claim of age discrimination subject to rational basis review); <u>Smith v. Shalala</u>, 5 F.3d 235, 239 (7th Cir. 1993) (marital status is not a suspect class, so review of equal protection claim proceeds under rational basis test).

Under a rational basis test, defendant's equal protection claim fails.  Applying such scrutiny, a statute may be defended on the basis of generalized classifications unsupported by empirical evidence. The classification must be upheld against an equal protection

9

challenge if there is any reasonably conceivable state of facts that could provide a rational basis for it. <u>Miller</u>, 523 U.S. at 452 (O'Connor and Kennedy, JJ., concurring in judgment). "Overinclusive categories are valid even if greater precision and more exceptions or subcategories might be better, for the task of deciding how much complexity (at what administrative expense) is justified is legislative rather than judicial." <u>Idris v. City of Chicago</u>, 552 F.3d 564, 567 (7th Cir. 2009).

The government quotes the legislative history of § 1401(g) in its response brief, noting that the statute intends to prevent the perpetuation of United States citizenship by citizens born abroad who remain there or who may go abroad as infants and not return to the United States. The reason is that "[n]either these persons nor their foreign born children would have a real American background or any interest except that of being protected by the United States while in foreign countries." Plt.'s Resp. Br., dkt. #14, at 11-12 (quoting S. Rep. No. 2150 76th Cong. 3d Sess. 4). Even so, Congress chose to provide citizenship on a more lenient basis to the illegitimate children of mothers who were United States citizens, in order to minimize the risk that the child would be born stateless. Flores-Villar, 536 F.3d at 996 (explaining that illegitimate children born to mothers who are United States citizens are more likely to be "stateless" at birth; if child's mother is not dual national and child is born in country that does not recognize citizenship determined by place of birth, child can acquire no citizenship other than his mother's at birth). .Although this distinction between

10

illegitimate children and legitimate children is not a perfect fit, it provides a rational basis to uphold the challenged statutory scheme.  Id. at 995-96; Runnett v. Schultz, 901 F.2d 782, 787 (9th Cir. 1980) (addressing same fact pattern at issue here).  Cf. Wedderburn, 215 F.3d at 802 (addressing statutory challenge by legitimated child of foreign parents, court notes in dicta that statute provides extra route to citizenship for illegitimate children but expresses no concern about this inequality).  Accordingly, the challenged statutes survive rational basis review.

Finally, defendant argues that he has his own equal protection claim based on the less favorable treatment given him as his mother's legitimate child than an illegitimate child would have received.  Although discrimination against illegitimate children is subject to heightened scrutiny, Gomez v. Perez, 409 U.S. 535, 537-38 (1973), I have found no case law addressing an equal protection claim by a legitimate child contending that he was treated less favorably than illegitimate children.  The implication of the Seventh Circuit's dicta in Wedderburn is that such a claim would not succeed, but I will not read too much into the court's passing remarks on this point.  In the end it does not matter:  in similar, but not identical contexts, courts have found that the challenged immigration statutes also pass intermediate scrutiny.  Flores-Villar, 536 F.3d at 997 (citing Nguyen, 533 U.S. at 61-65).  In both Flores-Villar and Nguyen, the issue was whether Congress could use different standards to deem illegitimate children United States citizens, depending on whether it was

11

their father or mother who held United States citizenship.   As the court held in <u>Flores-Villar</u>, 536 F.3d at 996,

> Avoiding statelessness, and assuring a link between an unwed citizen father, and this country, to a child born out of wedlock abroad who is to be a citizen, are important interests.   The means chosen substantially further the objectives.   Though the fit is not perfect, it is sufficiently persuasive in light of the virtually plenary power that Congress has to legislate in the area of immigration and citizenship.

(citing <u>Nguyen</u>, 533 U.S. at 70).

These same concerns are equally true in this case, even though the parent with United States citizenship is defendant's mother.   The United States has the right to insure that when women who are United States citizens married to foreign nationals give birth abroad, they have sufficient temporal and geographic ties to this country that passage of citizenship to their foreign-born children is meaningful to the child and in this country's national interests.   Further, in the light of genuine concerns over the fate of stateless children, it is prudent for the United States to provide a lower threshold for illegitimate children born abroad to mothers who are United States citizens.   In sum, the statutory scheme challenged by defendant is sufficiently tied to important national interests to withstand intermediate scrutiny.   There is no basis to grant defendant the relief he is requesting in this case.


ORDER

12

IT IS ORDERED that defendant Jose Guadalupe Dominguez's motion to dismiss the indictment against him is DENIED.

Entered this 10th day of May, 2010.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge